As noted in *Petrone v. Kennedy, supra,* 75 *N. J. Super.,* at *p.* 303:

"When we deal with business employers, '[o]ur act is construed to bring as many cases as possible within its coverage,' *Hannigan v. Goldfarb,* 53 *N. J. Super.* 190, 195 *(App. Div.* 1958). *Cf. Graham v. Green,* 31 *N. J.* 207 (1959). However, as Larson says (§ 50.25, *p.* 745), we should be slow 'to impose Workmen's Compensation liability on householders, either by judicial decision or by statutory extension * * *.' "

The judgment of the County Court is affirmed.

WILLIAM ZIEGENBALG, TRADING AS HILLTOP LIQUORS, *ET AL.,* PLAINTIFFS-RESPONDENTS, v. MAYOR AND TOWNSHIP COMMITTEE, TOWNSHIP CLERK OF THE TOWNSHIP OF WOODBRIDGE, DEFENDANTS-RESPONDENTS, AND AUGUSTIN LAVIN, ANGELO ROSSI, JOHN PAPPAS AND NEIL J. CRANE, DEFENDANTS-APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued December 10, 1962—Decided December 13, 1962.

418

Before Judges GOLDMANN, FREUND and FOLEY.

*Mr. Sam Weiss* argued the cause for appellants (*Messrs. Jacobson & Winter,* attorneys; *Mr. Weiss,* on the brief).

*Mr. Robert N. Wilentz* argued the cause for respondents (*Messrs. Wilentz, Goldman, Spitzer & Sills,* attorneys; *Mr. Douglas T. Hague,* of counsel).

The opinion of the court was delivered by

GOLDMANN, S. J. A. D. The individual defendants, Lavin, Rossi, Pappas and Crane, appeal from (1) the restraining orders issued by the Law Division judge on December 26 and 29, 1961, and on January 3, 12 and 16, 1962; (2) the order denying defendants' motion for summary judgment, entered April 24, 1962, and (3) the final judgment entered on July 17, 1962. The judgment declared invalid the Woodbridge Township ordinance of December 21, 1961 amending the township liquor ordinance so as to authorize the issuance of four new Class D* plenary retail distribution licenses, and further declared invalid the licenses awarded thereunder to the individual defendants. The judgment permitted those defendants to hold their licenses until final determination of the merits of the controversy in the appellate courts, but enjoined them from exercising any rights thereunder until further order of the court.

## I.

The April 24, 1962 order denying defendants' motion for summary judgment is affirmed for the reasons set out in Judge Cohen's opinion of April 3, 1962. The final judgment is affirmed substantially for the reasons stated in his oral opinion of June 21, 1962, except in the following respect.

In the course of his oral opinion, the judge noted that at the township committee meeting of December 29, 1961,

---

*Class D is the designation used in the ordinance. However, plenary retail distribution licenses are statutorily classified as Class C licenses. *N. J. S. A.* 33:1-12(3a).

when the four Class D licenses were issued, there was a bare quorum of six committeemen present. One of the six was Township Committeeman Molnar, holder of a Class C plenary retail consumption license. Although he abstained from voting on the four resolutions granting the licenses, the trial judge held that his presence could not be counted for the purpose of constituting a quorum. He relied upon such cases as *Hill Dredging Corp. v. Risley*, 18 *N. J.* 501, 536 (1955); *Enright v. Heckscher*, 240 *F.* 863, 872 (2 *Cir.* 1917). Those decisions, and similar ones in New Jersey and other jurisdictions (some of them are set out in *Enright*) hold. that a director whose interest in a matter disqualifies him from voting upon a resolution concerning it, cannot, according to the better opinion, be counted for the purpose of ascertaining whether a quorum is present when the vote is taken. He loses, for the time being, his character as a director.

▇▇▇ We do not join in that portion of the opinion because the record does not establish that Molnar had a personal interest in the issuance of any of the four Class D licenses. Our courts have not extended disqualification in the case of a member of a municipal governing body farther than to prevent him from voting on a matter in which he is personally interested. See, for example, *Griggs v. Princeton Borough*, 33 *N. J.* 207, 219 (1960); *Van Itallie v. Franklin Lakes*, 28 *N. J.* 258, 267 *et seq.* (1958); *McNamara v. Saddle River*, 64 *N. J. Super.* 426, 429 *et seq.* (*App. Div.* 1960); *Aldom v. Roseland*, 42 *N. J. Super.* 495, 501 *et seq.* (*App. Div.* 1956); *Zell v. Roseland*, 42 *N. J. Super.* 75 (*App. Div.* 1956); *Piggott v. Hopewell*, 22 *N. J. Super.* 106, 110 (*Law Div.* 1952). We observe, incidentally, that the issue of a quorum was not raised by the pleadings or pretrial order, nor was it recognized or tried by the parties.

## II.

▇▇▇ Defendants attack the original restraint contained in the order to show cause dated December 26, 1961, issued

on the basis of the complaint and four verifying affidavits, respectively sworn to by four of the plaintiffs, claiming that the verifications were defective in that each of the affidavits stated that the allegations of the complaint "are true to the best of my knowledge, information and belief." The application for the order to show cause was on *ex parte* motion. The verification of the complaint should have been on personal knowledge, *R. R.* 4:44–4; *cf. R. R.* 1:11–1 and 2:11(d). However, this defect was not urged in the trial court, and may not be advanced now.

The order to show cause temporarily restrained the municipal defendants from holding a public meeting scheduled for December 26, 1961; from holding a public meeting until such time as late-filing applicants for the Class D licenses might properly be considered and investigated, and from issuing any Class D license until such time as the township committee and the public had an opportunity adequately to investigate the background of the late-filing applicants. The governing body did not therefore meet on December 26, but postponed the scheduled meeting until December 29. On the morning of December 29 the parties appeared before the Law Division judge who, after hearing argument and considering the pleadings, announced that the restraint would be continued. He said that the township committee would have no authority to act at the meeting scheduled that evening for the purpose of issuing the four additional licenses, at least until the complaint was dismissed or the restraint resolved. A form of restraining order was drafted the same day, but was not signed because township counsel objected to some insignificant wording. The restraining order was apparently entered the next day. However, at the township committee meeting held on the evening of December 29, the township attorney read a prepared statement advising the governing body of the court's oral order and the possibility of the committee's being held in contempt if it acted.

Defendants claim that the restraining order dated December 29 was not supported by affidavits or proofs, and

therefore fell of its own weight. Be that as it may, neither this argument nor (as we have noted) the argument addressed to the original *ex parte* restraint, was raised before the trial court. We will not consider it now. The significant fact remains that the municipal defendants, as well as the individual defendants who were present at the township committee meeting on the evening of December 29, heard the statement read by the township attorney and so had full knowledge that the trial judge had forbidden any action's being taken on the issuance of the four licenses. Despite this, the Republican majority of six committeemen proceeded to adopt resolutions granting the licenses after the Democratic minority of four committeemen had left the room at the conclusion of the township attorney's statement.

■ Insofar as the subject matter of this appeal is concerned, we find that bad faith and clandestine conduct permeate the entire atmosphere surrounding the adoption of the amendatory ordinance and the issuance of the four licenses. The haste with which the Republican members acted on the eve of their departure from office on December 31, 1961 (having lost at the general election in November), and their disregard for the restraint contained in the *ex parte* order and its continuance on December 29, exhibited a clear lack of conscientious concern for the public interest. What they did trespassed upon the spirit and purpose of the licensing power entrusted to governing bodies (or licensing authorities appointed by them) under our Alcoholic Beverage Control Law, *R. S.* 33:1-1 *et seq.,* as amended. See, for example, *R. S.* 33:1-24.

The judgment is affirmed.